case number 20-5175 USA v. Jorge Vargas-Ruiz. Oral argument not to exceed 50 minutes per side. Mr. Metzger for the appellant. You may proceed. Thank you, Your Honor. May it please the court. Edward Metzger. I represent defendant appellant Jorge Vargas-Ruiz and I'd like to reserve two minutes of time for rebuttal. Fine. The court had asked us to address two different issues. So I'd like to start by just giving the short answer to each question that was posed and then give them a more lengthy explanation of each. The first issue was what was the understanding of the change of plea hearing regarding how any 5k motion would affect the 168 month ceiling that was set forth in the plea agreement. The record reflects that the understanding of the parties at that district court was that the 168 month ceiling was the starting point for any 5k motion. The second issue that the court asked us to address was what effect, if any, does the fact that Mr. Vargas-Ruiz did not ask the district court if he could withdraw his plea have on the determination of whether that plea was entered knowingly, voluntarily, and intelligently. And the short answer is that it has no effect. So I'll take each issue in turn. With respect to the first issue, the understanding of the change of plea hearing, the understanding of the United States was that the downward departure would be, quote, in addition to what is stated in the plea agreement pursuant to rule 5k 1.1 and also Title 18 United States Code 3553, end quote. And that's from Docket Entry 149, page IV-425. So because the plea agreement stated a 168 month ceiling, the departure would be in addition to that ceiling in the words of the government's attorney. I'm sorry, Counselor, what specific language would you point us to that so commits the government to that approach? I'm sorry, Your Honor. That was on page IV-425. So the government's attorney said, in addition to what is stated in the plea agreement pursuant to rule 5k 1.1 Title 18 of United States Code 3553 when discussing the contemplated downward departure. So in our view, that means that the 168 months is the starting point for any departure, which is what the defendant pointed out in his sentencing memorandum as well. And that's Docket Entry 103. The district court had the same understanding at that change of plea hearing. It confirmed the United States representation that the downward departure would be in addition to the 168 month ceiling. The court said, quote, but with respect to its supplement, I believe I understood you to say that this would be on top of that, end quote. And that's at page IV-426. At some point, Counselor, Mr. Vargas-Ruiz's counsel mentioned filing a request for a variance. How does that play into your interpretation of the language regarding the downward departure? So I think it was contemplated that the downward departure was the understanding of Mr. Vargas-Ruiz that that was going to be asked for and that there could be a variance asked for on top of that. My client's understanding, based on what's in the record, is that he was going to get a sentence of 120 months. And there's also discussion at that change of plea hearing of a variance from the mandatory minimum of 120 months based on a 3553 motion. So there was an idea that ultimately didn't come to fruition, but that could possibly have been below that 10-year mandatory minimum based on variance following a 3553 e-filing. So where does the 120 months come from? I know there's the mandatory minimum of 10 years, but where does your client's understanding of a 120-month sentence originate? Maybe you can point to the record somewhere. Yes, based on his conversations with his counsel, it was his understanding that he was going to be getting a sentence of 120 months based on five levels of departure. And that's discussed both at the sentencing hearing, and then that's also discussed in one of the letters that he filed with the court. So there was a letter at Stock Entry 93 that he indicated that before he pleaded guilty, his counsel advised him that the prosecutor was the number of departure levels that he was hoping for, which would have resulted in the sentence of 120 months. That was later clarified both at the sentencing hearing and in another letter that he sent, which is Docket Entry 127, indicating that his defense lawyer told him to plead guilty in order to get that mandatory minimum of 120 months. Other than his statements, was there anything else in the record that you would point to for that 120 months? The portions of the record, I think, that support that 120-month understanding of Mr. Vargas Ruiz would be the two letters that he sent, as well as the representations from his second lawyer at the sentencing hearing, where he had spoken to both the government's attorney and the first defense lawyer and said, I'm not sure whether he was And again, that gets to our issue of whether the plea itself was knowing, intelligent, and voluntary, because what ultimately matters is what Mr. Vargas Ruiz's understanding was, not what the understanding of the district court was, not what the understanding of the United States was, but what Mr. Vargas Ruiz's understanding was at the time that he signed his plea agreement and at the time that he entered his plea. So his... Excuse me, it's a subjective standard as opposed to an objective standard? I think it's an objective standard, and then we have to look at what the record reflects that he knew. So what the record reflects that he knew, based on the filings that he made personally, based on the representations of his second attorney at the sentencing hearing, and quite frankly, based on some of the representations based on his initial attorney about the communication issues that they had had and the fact that he was not satisfied with the communication he was receiving from his first attorney. The record from the very outset is replete with examples of the fact that he did not have good communication issues with his attorney and that he did not understand exactly what was going on. Now, I think in response, the government rightly points to the Rule 11 colloquy at the change of plea hearing, and that's certainly evidence that's in their favor, but the case law says that that plea colloquy is not dispositive and that we have to look at the totality of the circumstances presented in the record. In terms of that objective component of the standard, is there also a reasonableness standard? Is there a law to that effect? I'm sorry, reasonableness with respect to... Yeah, well, is there a reasonable standard as to whether it was reasonable for Mr. Vargas-Ruiz to believe that he would receive a 120-month sentence? It's still not completely clear to me if the 120 months originates from just what his counsel told him early on as the mandatory minimum or is from a five-level departure, which I think takes him down in a range maybe a little bit above 120. So, I'm not exactly sure how you get to a round number 120, but I guess my question is, do we look at whether it's reasonable for Vargas-Ruiz to believe that he was going to be sentenced at 120? I'm not sure of any case law on point one way or the other as far as the reasonableness, but I certainly wouldn't disagree with that as a standard that his belief objectively based on what's in the record has to be reasonable with all those facts that are in the record to support his belief at that time. Your strongest point, is it not, is this transcript of the change of plea hearing at page IDs 425 and 426, where both the government and the district court say explicitly that the 5K, if it is moved for by the government, would be on top of the agreement that 168 months be the maximum sentence, correct? Yes, in terms of the 168 months being the jumping off point for what his sentence would ultimately be, yes. I'm just curious, what would be, say, a three-level departure from the guidelines? What would that have put your sentence at? I'm sorry, Judge, I didn't hear your question. Well, I mean, I gather the 168 was a two-level departure from the guidelines. What would be a three-level departure? Do you happen to know? A three-level departure would have been 151 to 188. Four-level departure would be less than that. A five-level departure would put you roughly at the 120. The five-level departure would have been a range of 121 to 151, yes. And what, tell us about the guilty plea aspect. I mean, your counsel had represented that he wouldn't have wanted to withdraw his guilty plea. So what would happen if we agreed that there was a breach of agreement by the government? What would happen? I think there's a disagreement in the record as to whether there was a desire to withdraw the guilty plea or not. His counsel said that he did not wish to withdraw his guilty plea. His letters reflect otherwise, that he did instruct his counsel to withdraw his guilty plea if he was not going to get the 120-month penalty that he thought that he had been promised. Did he send such a letter before the actual sentencing hearing where the counsel said he did not want to withdraw the guilty plea? He sent several letters before the sentencing, but the one that specifically referenced withdrawing the guilty plea was after sentencing. So does, this sort of ties in with the second question, but I think they are both related. Does the fact that he did not with counsel move to withdraw the guilty plea at the sentencing hearing, when he finds out he is not getting the benefit of what he thought was the bargain, does the failure to withdraw or to attempt to withdraw the guilty plea at that point have any impact on whether or not there's any relief that this court has available to it? I would say no, and for two reasons. First, at the change of plea hearing, the court instructed him that if the guilty plea and the plea agreement were accepted, he'd have no right to withdraw the plea. So that's what he had been told. His correspondence indicates that he did wish to withdraw the plea, and he instructed his attorney to do so, but his counsel did not, which may well have been because of this previous admonition that he had no right to withdraw the plea. As far as the standard of review, I don't think that the effect on the standard of review, because it's a de novo standard. The government argued alternatively saying that you have to withdraw the guilty or move to withdraw the guilty plea to get that de novo review, but there are several cases that are to the contrary, United States versus Dorsey, 455 Federal Appendix 680, United States versus Varner, 598 Federal Appendix 389, and United States. In each of those cases, the court applied de novo review when assessing the validity of a guilty plea, and none of those defendants had previously moved to withdraw that guilty plea. So we think that the de novo standard of review is appropriate on that basis, and that he should not be penalized for failure to withdraw the plea based on the fact that he instructed his counsel to do so, and the fact that he had previously been told that he could not. If he withdraws, is allowed to withdraw his guilty plea, that means he can be tried for everything that the government wants to try him for, correct? So he may end up with a very substantially greater sentence. Does he know this? Yes, Your Honor. Any further questions? I see your time is up. You have your rebuttal time. Any questions? No? Okay, we'll hear from the government. Mr. Cushing. May it please the Court, Chair Cushing for the United States. Your Honor, I think I'll start out with the questions as well. I guess the most appropriate thing to do since those were questions you directly asked. The party's understanding at the guilty plea was that the I understand why my colleague on the other side is arguing it the way he is, but he's taking out of context that statement in the supplemental plea. Now, one thing though, the statement itself does say it's in addition to what's in the plea agreement, the possible departure. The parties contemplate all along that there could be a further departure. But the context of this, you have to get to 168 somehow, and the sentencing guidelines range was 210 to 262 months. Oh, and I made a mistake in my brief at page 8, by the way. I was looking at the former pre-sentence report and said that the offense level was 37 and the range was 262 to something, and that's incorrect. The level was 35, 210 to 262, and Mr. Metzger had that correct in his brief. You have to depart from that range, depart or vary, and there has to be a basis to get to 168. So in the context of the whole case, the record shows that the parties contemplated this to be a departure to begin with. This was the initial departure contemplated. The parties hoped, and the prosecutor even stated he believed, that there would be some additional value to Vargas Ruiz's cooperation. It just didn't happen by sentencing. I don't know that it couldn't happen still, but if we... I have to say that the comments on 425 and 426 give me pause in terms of accepting your explanation here, because it sounds to me that both Mr. Fentress and the district court were saying that the cooperation would, and the 5k, if it were requested by the government, would be in addition to, in other words, helping get below the 168 months. And why isn't that objectively a reasonable interpretation of those statements on 425 and 426? It's a possible interpretation if you take it out of context as it is. It is also a reasonable interpretation to say he's saying it's going to be in addition to, and there's the attorney's statement that that's a ceiling. We intend to seek more than that. But if you look at the context of the whole case, and I know I already said it, and I apologize for repeating it, but I'm not sure how else to argue it, but you have to get to 168 somehow. You can't just pull a number out of the air. What I don't understand on page 426, the judge is saying, in other words, you would consider making a 5k in order to go below the agreed upon ceiling, not the agreed upon sentencing guideline range, but the ceiling. And nobody disputes 168 months was the ceiling. That was the original plea agreement that he wouldn't be sentenced to more than 168. And the judge says, okay, if you do the 5k, you'll do it in order to go below that ceiling. And the counsel for the government and for the defendant say, yes, we have agreed to do that. So I don't, I just don't buy your explanation, I guess. And even in context, from what appears on the face of the transcript. Well, and I'll try to persuade you otherwise, Judge. There was contemplated an additional 5k. The parties understood in the context of this case, that to get to 168, there had to be a departure or a variance. There has to be some basis to get to 168. And the basis here, and it's confirmed at the sentencing. And I realize we're saying, what was the understanding at the guilty plea? But the rest of what went after that can also reflect on what the understanding was the guilty plea, but was confirmed in sentencing, that it took a two-level depart. Yes, Your Honor. Sorry to interrupt, but are you saying that the parties in a guilty plea 11C1C could not pick a number out of the air as the agreed upon sentence, they have to have a basis in the sentencing guidelines? What tells you that that is a restriction on the number that can be picked by the parties in the guilty plea? Your Honor, it's based on the statutes and the guidelines, the statutes and the case law for that matter, the law of sentencing. If you give me something precise, if you say it's the statutes, the guidelines and the cases, that's everything that there is. Yes, Your Honor. Yes, 183553A says that you start with the guidelines range. The case law from this court, and I'm sorry we didn't cite it in our brief, but didn't really anticipate this particular question. The case law in this circuit says you always start with the guidelines range. Even in 11C1C case? Even in 11C1C case, because the district judge is going to want to know why the district judge should accept this agreement, how do you get to that there has to be a reason to get to that number because we're going to do a pre-sentence report. The court's going to consider the guidelines range and he has to. That's the way sentencing is set up. If your guidelines range is 210 to 262 and your plea agreement is for 168 or a ceiling A. In this case, if he had not cooperated and or if the government had decided the cooperation wasn't enough to warrant any 5k then you're saying the district judge could not have sentenced him to 168 months? I'm not saying he could not have, but the judge would have wanted to know what the basis of the variance because then we would be talking variance rather than departure or it could have been some other basis for departure. It has to be a departure or a variance and the judge and Judge Hale particularly would have wanted to know how do I get from 210 to 168. The law doesn't say you can't do it, but the law is set up to where you really shouldn't do it that way. The judges in our district, in particular Judge Hale, is going to insist on an explanation of how you get from 210 to 168. In this case, the record shows that you get there by a two-level departure. Two levels from 35 is 33. Coupled with the category history three, it comes up to 168 to So as I read this language at pages 425 and 426, which appears that we're really focusing on, is it my understanding or is it the government's position that as the government in its sole discretion said it would consider a 5k one, part of that consideration could have resulted in a departure of three levels or four levels or five levels, but the government chose for whatever reasons, I guess the degree of assistance to depart downward two levels as opposed to three, four or five. That's exactly correct, Judge. So when defense counsel at sentencing, the new defense counsel at sentencing, said that it was Mr. Vargas Ruiz's understanding that there could be as much as a five-level departure, that was correct. In fact, there could have been even more than that because there was a contemplation of a possibility of moving under 18 U.S.C. section 3553E to, I think I got the the mandatory minimum of 120 months. It just didn't work out that way. The value of his cooperation didn't warrant more than a two-level from our perspective. Now the judge, of course, once we make the motion, the judge has discretion to go down further and defense counsel argued, asked the judge to go down further. And the judge explicitly said that he would not sentence less than 168 months in this case. If the parties had presented a plea agreement to him that called for a sentence of less than 168 months, he would have rejected it. I'm sorry, continue. I'm sorry. No, no, I was finished, Judge. Go ahead. So a five-level departure would take us down to 121 to 151, I think. So I'm still struggling to figure out where 120 fits into this other than it's the 10-year mandatory minimum. Maybe you can share somewhat on that. Not a lot. It appears to be because the 120 months never came up until after the notice of appeal was filed, even after sentencing, after the notice of appeal was filed. 128 months first appears in that letter after the notice of appeal. Now, that's without my knowing what was in the ex parte hearing transcript to relieve counsel. If it came up in there, I don't know because I don't have access to that. But from the record that I have at least, 120 months and in my colleague's brief, when he describes that hearing, he doesn't say anything about 120 months. So the first time 120 months comes up is in this letter, in the same letter that the first time of withdrawing the plea comes up in this letter after even the notice of appeal was filed. And he was talking about filing an ineffective assistance of counsel claim under 2255 in that. So the 120 months, it's the mandatory minimum. Maybe he expected the mandatory minimum. It's also interesting in that letter that he says that, now I realize it conflicts a little bit with his letter R-93, but in R-127, the one that after the notice of appeal, he says that his counsel talked to him or sent him a letter, I think it might have been, talking about asking the prosecutor to depart down to the 120 months and he got that letter in September, he says. The sentencing was in June. So it appears from the record, at least there's a reasonable inference from the record, was that he developed this understanding, this hope that he would get less than 168 months even after he entered that guilty plea. And certainly after he signed the plea agreement, the plea agreement says 168 months. He understood he could get 168 months. The supplemental plea agreement that he signed on the same day as he signed the plea agreement said, and the government will consider moving for a 5k 1.1. So to me, a reasonable defendant who's relatively uneducated and certainly uneducated in the law could think that that supplemental was adding to benefits that he could have because otherwise, why would he attempt to do the cooperation if the main agreement simply said maximum sentence of 168 months? Well, because he would give that cooperation so he wouldn't be faced with a 20-year mandatory minimum. He had a prior conviction that we could have filed a notice on and he'd have been subject to 20 years. He would cooperate so he would not get 210 months in prison, which was the low end of the guideline range without any cooperation. So 168 months is a whole lot more attractive than 210 and certainly more attractive than 220. But the plea agreement already came to that conclusion that if he pleads guilty, he'll be sentenced to no more than 168. And he had that even if he hadn't cooperated. We had already determined he had already cooperated. And we had already determined that the cooperation he had given to us, and that is what the prosecutor said in the hearing supplement. So we had already assessed that he gave us enough cooperation by the time of the plea agreement and the guilty plea to warrant a two-level departure to get to 168. He'd already started cooperating before. So then this brings us up to where you said there was going to be, then you were going to consider a second plea agreement that would have gotten him below that 168. Is that what you're telling us? Yes. The plea agreement contemplated, or the supplement contemplated, an even further reduction beyond 168, more than a two-level reduction. And I see, I think I'm out of time. But the government never filed the second 5k. Is that right? Never did? The government didn't do a second one. That's right. Didn't do a second one and didn't move for more than the two levels that the original plea agreement contemplated in the 5k that we did move for a 5k, but only to the extent of the two levels we had agreed to already. See, we were bound to move for a 5k for two levels from the moment of the plea agreement. I'm confused. You're saying you were bound to move for the two levels at the time of signing the plea agreement, which was the same day as you signed the supplemental. And that's because of your whole argument that in order to get to 168, you had to have some kind of rationale, and the rationale is going to be a 5k two-level departure. Is that what your argument is? That's what my argument is, and that's what the record supports. The problem with the supplemental is it says that you are not bound to offer a 5k, that it's completely up to you, the government, whether to offer a 5k, and it's completely up to you as to how much it would be. So, how can a reasonable person reading that think that the government was bound to issue a two-level 5k departure? Again, because of the whole context of this case, the prosecutor and the defense attorney agreed that Mr. Ruiz had already provided assistance. The prosecutor already told the court that his assistance was helpful and substantial. He should have worded things a little differently, both in the plea supplement and at the plea hearing, but I guess if we all worded things that plea, supplemental plea hearing, or the supplemental transcript, you can't take that out of context. Yes, focus on it, but don't take it out of context. We have to put it in the context of this entire case, and the fact that we already informed the judge the defendant had given us valuable cooperation. We already informed the judge that we thought his cooperation might increase in value as time went on and other things might take place. So, all that shows that we already had agreed to a departure. It was just a matter of how much of a departure and whether we were going to move for additional departures from what we already agreed to in the plea agreement. And your honors, unless there's... I do have one more question. It's your time, Judge. I know. You mentioned that he had a prior conviction that the government could point to that would allow for a 20-year mandatory minimum. If we vacate the guilty plea on the grounds that it was not voluntary, etc., would the government have the power to if the case went to trial? Certainly. Everything would be back in play again. So, we would certainly have that opportunity or that option, and it would be a matter of how whoever the prosecutor is going to be assesses that at the time it comes back. Any other questions from the judges? Thank you. Thank you, your honors. We ask the court to affirm the district court. Mr. Metzger. You're mute is on, Mr. Metzger. I apologize. Thank you, your honor. With respect to the 11C1C plea agreement, the parties don't have to pick their starting point number based on the guidelines. That's one argument that they can make, certainly, because under the statute 3553, the court does have to consider the guideline range. But as we all know, those guidelines are advisory ever since Booker. So, that does not have to be the basis for an 11C1C plea agreement. They can certainly rely on any of the other sentencing factors outlined in the statute as well. The cooperation here and the potential 5K was supposed to go from 168 months. Mr. Vargas-Ruiz was going to get a 168-month sentence if no departure motion was filed. That was something he was going to get, period, under that plea agreement. But it was his understanding, based on his conversations with his counsel, what was relayed to him, that he was getting those five levels of departure. And that was his incentive to cooperate in this case. So, I just reject the just to get to the 168. The 168 was contemplated as the starting point. Counsel, can I ask, is there anything in the record that shows why Mr. Vargas-Ruiz thought that the 168 was a starting point and that the two-level downward departure was not baked into that? Because if you look at the guidelines and you look at a two-level departure, that's the 168 to 210 range. So, that 168 number is right there at the bottom of that range. And so, I guess I'm just wondering if there's anything that would show us that he thought that everything starts at 168 and why that number? The proof of everything starting at 168 goes back to those same two pages we keep talking about, 425 and 426, when the government says this is the starting point and the district court affirms that this is the starting point for any downward departure motion that's filed. How they came up with that as their starting point number, it's not in the record. We don't know. Okay, thanks. Any further questions? We thank you both. We appreciate your time. This honorable court is now adjourned.